### GREGG v KENT

Ohio Appeals, 2nd Dist, Madison Co

No 137. Decided July 21, 1938

Frank J. Murray, London, for plaintiff-appellee.

Crabbe & Crabbe, London, and Dean Richmond, London, for defendant-appellant.

## OPINION

By THE COURT

The above-entitled cause is now being determined as an error proceeding by reason of defendant's appeal on questions of law from the judgment of the Court of Common Pleas of Madison County, Ohio.

Plaintiff's action was brought under the provisions of §10506-67, et seq. GC.

Plaintiff's complaint, as filed in the Common Pleas Court September 27, 1937, is a very short narrative and in substance sets out the following:

That the complainant is the duly appointed and qualified executor of the estate of Lovina White, deceased, he having received his appointment from the Probate Court of Madison County. Then follows the complaint against the defendant, which is set out in full:

"He further represents that the defendant, Levi Kent, is in possession of moneys, chattels and other personal property which belongs to the estate of Lovina White, deceased, and which he refuses to turn over to the executor of said estate for administration according to law."

The prayer asks that a writ of citation may issue against the said Levi Kent, requiring him forthwith to appear before the court then and there to be examined on oath touching the matter of the complaint, and that such proceedings may be had in the premises as are authorized by law.

The defendant, Levi Kent, through his attorney, waived the issuing and service of citation, and voluntarily entered his appearance on the same day that the petition was filed. The defendant filed neither motion, demurrer or answer, or any other form of pleading.

On October 7 an agreed statement of facts was filed, duly signed by the attorneys representing the respective parties. The scope and purpose of this agreed statement of facts are set forth in the first paragraph, as follows:

"It is hereby stipulated and agreed by and between plaintiff and defendant that the following are the facts from which the controversy between them arises, and the same are to be considered by the court as though proven in open court by the oaths of witnesses."

The remainder of the agreed statement of facts is set out in numbered paragraphs from 1 to 9, inclusive, and is herein quoted in full:

"(1) Alexander Wilson died testate on June 29, 1881. His will was admitted to probate and record by the Probate Court of this county on July 13, 1881. The Third Item of said will is as follows

"I give and devise to Owen Harbage and his successors in office the following premises: What is known as the Emmet Farm situate in Franklin County, Ohio, which is now occupied by my daughter, Lovina, containing about one hundred and seventy-five acres, and all my land lying south of the National Road in Madison County, Ohio, and adjacent to the town of West Jefferson, that is known as the Ryan land and a small piece adjoining said town bought of Anna Seevy and Peter Seevy and containing one and one-quarter acres, making about six hundred and twenty acres in Madison County, Ohio, and making in all about seven hundred and ninety-five acres; to have and to hold the same during the natural life of my daughter, Lovina. In trust to and for the several uses, intents and purposes herein mentioned, namely:

"1st. In trust to lease the same and to take, collect and receive the rents, issues and profits thereof and out of the same to keep said premises in good order and repair and pay all taxes, assessments and charges that may be imposed thereon and the costs and expenses of this trust.

"2nd. In trust to pay the residue of such rents, issues and income to my said daughter Lovina upon her sole and separate receipt to the intent and purpose that she may enjoy, possess and have the same free from the control, interference or liabilities of any husband she may have during her natural life.

"3rd. In trust to convey said premises, upon the decease of my said daughter Lovina to her children share and share alike in fee simple, and in default of said children, to convey the same to her brothers or their heirs.

"4th. It is my will and desire that the trustee aforesaid or his successor allow my said daughter Lovina to rent so much of said premises yearly as she may desire upon her paying a sufficient amount of money to him to pay the expenses mentioned in Item First of this trust and upon her executing to said trustee a receipt for the residue of said rent or income.

"(2) Throughout the years various trustees have been appointed to carry into effect said trust; the last to be appointed being the defendant, Levi Kent, who was appointed on August 28th, 1934.

"(3) On July 25, 1937, Lovina White, the cestui que trust, died testate. Her will was admitted to probate and record by the Probate Court of this county on September 8, 1937; and plaintiff Earl E. Gregg was

appointed executor of her will by said Probate Court on September 16, 1937, and is still acting as such.

"(4) On September 11th, 1937, two months after the death of the cestui que trust the trustee, Levi Kent, filed in the Probate Court of this county, his "report and account" as such trustee which shows that he now has in his possession the following items of trust property:

"(a) $732.66 in cash.

"(b) Undivided one-half interest in 24 brood sows.

"(c) Undivided one-half interest in 114 shoats.

"(d) Undivided one-half interest in 68 ewes.

"(e) Undivided one-half interest in 35 lambs.

"(f) Two notes of $100.00 each signed by Charles Phillips.

"(g) Two notes of $45.00 each signed by Robert and Leigh Bradfield.

"(h) Note for $45.00 signed by Dr. J. C. Kile.

"In addition to the foregoing said trustee also has in his possession an undivided one-half interest in 100 acres more or less of corn upon the trust lands.

"(5) All the foregoing items of cash, notes and personality in the hands of said Levi Kent, trustee, represent rents, issues and profits derived from his management and operation of the farm lands included in said trust; and the total cash value thereof is $4000.00.

"(6) All expenses incurred by Levi Kent as trustee have been paid and all taxes and assessments levied during his trusteeship have also been paid; although there are back taxes upon real estate of about $700.00 which were due at the time of his appointment which have not been paid, and there are many improvements which should be made upon said real estate. The reason said back taxes have not been paid and said improvements made by said trustee is that the cestui que trust needed money to live on and her children who are the remaindermen requested the trustee to pay money to her rather than on taxes and improvements.

"(7) On September 21, 1937, Earl E. Gregg as executor of the will of said Lovina White demanded of said Levi Kent that he turn over all the items of personal property shown by his account to be in his hands as such trustee in order that the same may be appraised and administered as assets of her estate, and said Levi Kent refused and

still refuses to turn the same over to said executor.

"(8) On September 29, 1937, Edith Bribenstine, one of the children of said Lovina White, filed her petition in this court in case No. 16914 praying for partition of all the real estate included in said trust.

"(9) The trustee has not conveyed the land as provided in the will and there is some question as to the persons to whom the conveyance should be made."

From the agreed statement of facts it appears that the defendant, Levi Kent, was trustee under the trust provisions of the will of Alexander Wilson. Lovina White, the daughter of Alexander Wilson, and the cestui que trust under the provisions of the trust, died July 25, 1937. Lovina White died testate, her will being admitted to probate and record in the Probate Court of Madison County, on September 8, 1937. The plaintiff, Earl E. Gregg, was appointed executor of her will by said Probate Court on September 16, 1937 and is still acting as such.

On September 11, 1937 Levi Kent, trustee, filed in the Probate Court of Madison County, his report and account, which shows that he now has in his possession specified items of trust property, all of which items are admitted to represent rents, issues and profits derived from his management and operation of the farm lands included in said trust, the total cash value thereof being $4000.00.

Under Item 6 it is stipulated that all expenses incurred by Levi Kent, as trustee, have been paid and all taxes and assessments levied during his trusteeship have been paid except back taxes upon real estate of about $700.00, which were due and payable at the time of his appointment on August 28, 1934. It is further stipulated that there are many improvements which should be made upon said real estate. It is agreed that the reason said back taxes have not been paid and said improvements made by said trustee was due to the fact that Lovina White, the cestui que trust needed money to live on and her children, who are the remaindermen, requested the trustee to pay money to her rather than on taxes and improvements.

The plaintiff executor on September 21, 1937, made demand of the said Levi Kent that he turn over all the items of personal property shown by his account to be in his hands and that the said Levi Kent refused and still refuses to turn the same over to said executor.

Apparently, the major contention made by counsel for the trustee in the trial court was that since the trustee (or his predecessors) did not keep the premises in repair during the lifetime of Lovina White, the trust should now be continued and that he should now begin to make improvements on and rehabilitate the farm to make up for the depreciation suffered because he did not keep the premises in repair during her lifetime. There was also the question of back taxes, which the trial court directed the trustee to pay from the funds in his hands before making distribution to the plaintiff.

The remaining questions were resolved against the trustee and he was ordered to turn over to the plaintiff, as executor, the remaining property in kind.

We have been favored with the very full and comprehensive written opinion of the trial court, elaborating at length on the issue as to improvements.

Another and further question is raised in our court which was not presented or discussed in the trial court, or at least it does not so appear from the briefs presented to the lower court and appended to the transcript of docket and journal entries as original papers. This contention may be best stated by quoting from the brief of counsel for the defendant trustee.

"We contend that §10506-67 GC does not contemplate an action against a trustee, where the evidence does not show any wrongdoing on his part."

Other excerpts in the brief raised the query as to whether or not it is intended to raise the question of jurisdiction of the Common Pleas Court to hear the cause at all. This claim is not expressly raised, but is called to our attention more through the cases cited than the text of the brief. We refer particularly to the case called to our attention several weeks following the submission in our court: **Morehead v Central Trust Company, Executor et, 54 Oh Ap 9.**

The question of the court's jurisdiction of the subject matter may not be waived or agreed upon but may be ▮▮▮▮▮▮ ▮ raised at any time. A reviewing court may sua sponte make appropriate order where it appears that the trial court did not have jurisdiction of the subject matter.

The Steamboat General Buell v Long, 18 Oh St 521. Syl. 4:

The Dayton Morris Plan Bank v Graham, 47 Oh Ap 311; Syl. 7;

The State Department of Liquor Control

v The Dispatch Printing Company, 20 Abs 404.

There can be no question that the exclusive jurisdiction is vested in the Probate Courts to control the conduct of testamentary trustees and settle their accounts. This is expressly provided in §10501-53 GC. Paragraph No. 7 refers to the appointment and qualification of trustees. The section further provides as follows:

"Such jurisdiction shall be exclusive in the Probate Court unless otherwise provided by law."

Does the petition in the instant case and the agreed statement of facts disclose a situation within the exclusive jurisdiction of the Probate Court?

The determination of this question has been attended with great difficulty and, unless compelled to do so, we would hesitate to determine the case against the plaintiff on jurisdictional grounds, particularly since this question was not presented to the trial court.

For reasons heretofore stated we must pass on the question of jurisdiction of the subject matter.

Plaintiff's action being grounded upon §§10506-67 to 10506-77, GC inclusive, must be found to be authorized under these sections or not at all. The sections having major importance are §§10506-67 to 10506-73, GC, although the remaining sections in the act are pertinent and should be read.

Under the agreed statement of facts the funds in question were in the hands of Levi Kent, as trustee. No complaint is made that the funds were concealed, embezzled or conveyed away. Under the earlier legislation these were the necessary elements requisite to an action under the section. Or the adoption of the new Probate Code, effective January 1, 1932, an amendment was incorporated, thereby adding the words "concealed, embezzled or conveyed away," the following:

"Or of being or having been in the possession of any moneys, goods, chattels, things in action, or effects of such estate."

This section §10506-67, GC, authorizes the complaint to be made to the Probate Court or Common Pleas Court by a fiduciary, creditor, devisee, legatee, heir or other person interested in the trust estate, or by the creditor of any devisee, legatee, heir or other person interested in the trust estate. The complaint is against the fiduciary or any other person suspected of having concealed, embezzled or conveyed away, or being or having been in the possession of any moneys, goods, chattels, things in action or effects of such estate. The words, "such estate," unquestionably refer to the trust estate previously mentioned. The words, "concealed, embezzled or conveyed away," mean wrongful action. Do the words, "or of being or having been in the possession of," imply anything less? The entire language of this section will not bear the construction that it au- thorizes the action by the fiduciary of another estate to invoke the provisions of this section to recover from the trust estate. The whole purpose of this section and those following is to provide a speedy remedy through summary proceeding to place the property in the hands of the fiduciary of the trust estate. In the instant case the property is in the hands of the fiduciary, to-wit, Levi Kent, trustee.

The matter of closing up the trust and settling the account is within the exclusive jurisdiction of the Probate Court. §10501-53, GC.

As further supporting our construction of §10506-67 GC, we call attention to the procedural steps prescribed under §§-68, -69, -70, -71, -72, and -73 GC.

Sec 10506-73 GC contains the following:

"In all cases except when the person so found guilty is the fiduciary, the court shall forthwith render judgment in favor of the fiduciary, or if there be no fiduciary in this state, in favor of the state, against the person or persons so found guilty, for the amount of the moneys or the value of the goods, chattels, things in action, or effect so concealed, embezzled, conveyed away or held in possession, together with ten per cent. penalty and all costs of such proceedings or complaint."

The word "guilty" contained in the above-quoted portion of the section implies wrongful possession. The provision for penalty implies that the person wrongfully in possession is kindred to the ones who "conceal, embezzle or convey it away."

The last paragraph of this section is also important:

"If the person so found guilty is the fiduciary, the court shall forthwith render like judgment in favor of the state against

him for such amount or value, together with penalty and costs as aforesaid."

This section, like §10506-67, GC, can be given no other construction than that the property to be recovered is for the use of the trust estate.

Sec 10506-74 GC provides that if a judgment is rendered against the fiduciary he shall forthwith be removed by the Probate Court, etc.

The case of **Meinzer v Bevington, 42 Oh St 325**, is directly in point. It is true that this case was decided before the present amendment to §10506-67, GC, whereby added persons were included, against whom the complaint might be made. The syllabus reads:

"The provisions of §§6053 to 6059, Rev. Stat., which authorize summary proceedings and judgment against persons concealing, embezzling, or conveying away assets of the estate of any deceased person, do not authorize a creditor, devisee, legatee, heir, or other person interested in the estate to prosecute such proceedings against the executor or administrator of such estate."

On page 327 of the opinion the court quotes from §6057, Rev. Stat., which corresponds to present section §10506-73, GC. Portions of this section are in parentheses and thereby the court is emphasizing that the judgment to be rendered is **in favor of the executor or administrator of the estate.**

On page 328 of the opinion we find the following:

"We hold, therefore, that the issuing of the citation against the administrator under these provisions of the statute was without authority of law, and therefore any judgment rendered by the Probate Court or by the Court of Common Pleas on appeal, was a nullity."

The case of Morehead v The Central Trust Co., Executor, and Trustee, et, supra, while not in any sense involving §§10506-67, GC, et seq., is yet in point, wherein comment is made as to the exclusive jurisdiction of Probate Courts over testamentary trustees. Also see:

**Leonard v State ex Scott, Exr., 3 Oh Ap 313;**

**In the Matter of the Estate of Jacob Ledig, 9 O.N.P. (N.S.) 169;**

**Halloran v Merritt, Admr., 48 Oh Ap 135.**

We are constrained to the view that the Court of Common Pleas had no jurisdiction to hear and determine the cause and hence its judgment is a nullity. Under this situation we have no authority to pass upon or determine the issues determined by the trial court. Anything we may say would be purely dicta. However, we might say that before determining the jurisdictional question we did consider and gave considerable study and thought to the issues as presented to the trial court. If the question of jurisdiction could be eliminated, which it cannot, the majority of this court would arrive at the same conclusion as did the trial court and we would have adopted his very well-considered opinion as our own.

Counsel may find these observations helpful in their further proceedings in the Probate Court. However, the entry will be confined to the jurisdictional question.

BARNES, PJ, HORNBECK and GEIGER, JJ, concur.